IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL E. JOHNSON, III,           )
                                  )
        Plaintiff,                )        Civil No. JFM- -OO - 3465
                                  )
v.                                )
                                  )
GIANT FOOD, INC. et al.,          )
                                  )
        Defendant.                )
                                  )

MEMORANDUM

Plaintiff Daniel E. Johnson, III ("Johnson") has brought employment discrimination

claims against defendant Giant Food, Inc. ("Giant") under Title VII, 42 U.S.C. §§ 1981, 1985,

1986, and also for wrongful discharge and breach of contract. Johnson alleges that, on the basis

of his race, Giant unlawfully terminated him in November, 1995 and April, 1996. For the

reasons discussed below, Giant's motion for summary judgment is granted on all counts.

I.

Johnson, an African American, was approached in 1993 by Giant employee Ruth "Joy"

Bird ("Bird"), who suggested that Johnson apply for a position with Giant. See Johnson Dep. at

36-40; Bird Dec. ¶ 2. Johnson did submit an application, and Bird hired him as a part-time

Porter in May, 1993. See Johnson Dep. at 47-48. On November 15, 1995, Bird terminated

Johnson on the ground that Johnson violated Giant's Fair Employment Policy ("FEP") when he

insulted and threatened to kill another Giant employee. See Termination Notice, Def.'s Mot. for

Summ. J., Ex. 2. Specifically, Bird believed that Johnson called Steve Lopynski ("Lopynski"), a

Produce Clerk, a "stupid ass mother fucker" and "faggot ass nigger" for walking on the wet floor

in the backroom that Johnson had just mopped. Bird also believed that Johnson, shortly after the verbal altercation, followed Lopynski into the parking lot and stated that he would kill Lopynski. See Bird Dec. ¶ 3; 1995 Term. Notice, Def.'s Mot. for Summ. J., Ex. 2; 1995 Disciplinary Notice, Def.'s Mot. for Summ. J., Ex. 1. Bird observed that Lopynski seemed scared and was shaking when he reported these two incidents to her. See Bird Dec. ¶ 4. There were no witnesses to the alleged name calling or threat making other than Lopynski and Johnson.

Bird reported the incident to Giant's Fair Employment Office, Debbie Munley (then-Manager of Giant's Management Development/Counseling Service department), and Larry Angel ("Angel") (then-District Manager for Store 214). See Bird. Dec. ¶ 5. Bird immediately suspended Johnson. See id.; Disciplinary Notice, Def.'s Mot. for Summ. J., Ex. 3. On November 15, 1995, at the instruction of Angel, Bird terminated Johnson for violating Giant's FEP. See Bird Dec. ¶ 6; Termination Notice, Def.'s Mot. for Summ. J., Ex. 2. The FEP states that "Giant will not tolerate or condone behavior that is in violation of the Fair Employment Policy," including "loud verbal exchanges, intimidating conduct and/or threats of physical harm, or other acts where a Giant associate believes his or her well-being is being threatened due to the harassing conduct of a fellow Giant associate." Def.'s Mot. for Summ. J., Ex. 6. The FEP goes on to state that violations of the policy "will be dealt with most seriously and may result in disciplinary action up to and including discharge." Id. Lopynski substantiated the name-calling that occurred in the backroom in an undated "slander" memorandum to Bird. See "Slander" Mem., Def.'s Mot. for Summ. J., Ex. 3. The "slander" memorandum does not mention the death threat Johnson allegedly made in the parking lot. See id.

Later that month, Johnson filed a grievance with Union Local 400 regarding his

-2-

termination. See Johnson Dep. at 93. According to Johnson, he did not call Lopynski names or threaten Lopynski. See id. The Union grieved Johnson's suspension as a violation of its collective bargaining agreement ("CBA"), which prohibits termination of a Union member without "good cause." See Def.'s Mot. for Summ. J., Ex. 7; CBA, Def.'s Mot. for Summ. J., Ex. 8. Johnson, Angel, and Union representative James Housewright attended a grievance meeting in December, 1995. Thereafter, Giant agreed to reinstate Johnson as a part-time Porter at Store 119. See Def.'s Mot. for Summ. J., Ex. 9. Johnson previously worked at Store 214.

Johnson left work early on March 11, 1996 due to a back injury. See Johnson Dep. at 388. That same day, he went to see Dr. Amir at the Veteran's Affairs Medical Center in Washington, DC. Dr. Amir treated Johnson and completed a Giant medical certification form for Johnson. See id. at 393-97; Amir Dec. ¶ 2-3. Still on March 11, 1996, Johnson took the completed form to Store Manager Jacqueline Tanis ("Tanis"). The original return date written on the form was March 12, 1996, which was crossed out and rewritten as March 18, 1996. See First Form, Def.'s Mot. for Summ. J., Ex. 10. Because the date when Johnson could return to work was scratched out and rewritten on the first form, Tanis requested that Johnson procure and submit to the Employment Office a second form which would clarify his return date. See Johnson Dep. at 402-03; Tanis Dec. ¶ 5. One hour after meeting with Tanis in Bowie, Maryland, Johnson delivered a second form to the Giant Employment Office in Landover, Maryland. See Johnson Dep. at 408-11; Tanis Dec. ¶ 6. The second form indicated that Johnson could return to work on March 18, 1996. See Second Form, Def.'s Mot. for Summ. J., Ex. 11. The Employment Office faxed a copy of the second form to Tanis. See Tanis Dec. ¶ 6. Tanis decided to investigate the authenticity of the forms because of the discrepancy regarding

-3-

Johnson's return date on the forms, inconsistencies between the doctor's signature on the forms, and the exceptional speed with which Johnson procured and delivered the new form. See Tanis Dec. ¶ 7. Tanis faxed a copy of the second form to Dr. Amir. See Tanis Dec. ¶ 8; Amir Dec. ¶ 6. After reviewing the second form, Dr. Amir indicated that the second form did not contain her handwriting or signature. According to Dr. Amir, she only filled out one form for Johnson, she did not make any cross-outs on the form, and she did not authorize anyone to sign another form on her behalf. See Amir Dec. ¶¶ 4-7.

On March 13, 1996, Johnson filed an unrelated grievance with the Union to protest an alleged violation of the CBA. See Def.'s Mot. for Summ. J., Ex. 20; Johnson Dep. at 377. According to the CBA, part-time employees who work for forty hours for more than six consecutive weeks and who are not filling in for another employee should become full-time employees. See CBA, Def.'s Mot. for Summ. J., Ex. 8, Art. 6, § 21. Johnson alleges that he met these requirements. The grievance did not contain allegations of discrimination. See Def.'s Mot. for Summ. J., Ex.s 20, 25.

Upon Johnson's return to work in early April, Tanis met with Johnson regarding the authenticity of the forms regarding his back condition. To substantiate Johnson's claims, Tanis requested that Johnson obtain a letter from Dr. Amir confirming that Johnson visited Dr. Amir twice on March 11, 1996 and that Dr. Amir had completed two forms for him. See Tanis Dec. ¶ 11; Johnson Dep. at 562-63, 424. Johnson did not submit any corroboration of his claim that Dr. Amir had completed both medical forms.[1] See Tanis Dec. ¶ 12; Baer Dec. ¶ 6.

---

[1]     According to Dr. Amir, Johnson did approach her and "attempted to convince me that I had signed the medical form (which I had not done). I told Mr. Johnson in no uncertain

On April 11, with authorization from then-District Manager John Baer, Tanis terminated

Johnson's employment for violating Giant's policy prohibiting dishonesty. See id. In relevant

part, that policy prohibits "proven dishonesty on the job and/or proven off the job dishonesty or

misconduct which relates to an associate's work or the work place." Def.'s Mot. for Summ. J.,

Ex. 15. Such dishonesty would "subject the associate to discharge." Id. The Union grieved

Johnson's termination again on the ground that Giant violated Article 10, Section 2 of the CBA,

which authorizes Giant to terminate employees for cause. See CBA, Def.'s Mot. for Summ. J.,

Ex. 8. The Union's letter to Giant did not mention racial discrimination. See Def.'s Mot. for

Summ. J., Ex. 16. A grievance meeting on May 9, 1996 was attended by Johnson, Tanis, Baer,

and Union representative Jeanne Swartz. Giant upheld Johnson's termination. See Johnson Dep.

365; Tanis Dec. ¶ 13; Baer Dec. ¶ 7.

Johnson filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") on December 16, 1996. In the administrative charge, Johnson alleges

that he was unlawfully discriminated against on the basis of his race when he was terminated in

April, 1996. See Charge, Def.'s Mot. for Summ. J., Ex. 18. Johnson did not mention in his

charge his earlier termination and reinstatement from 1995. See id.

II.

Johnson claims that Giant unlawfully discriminated against him on the basis of his race in

violation of Title VII. Johnson bases his Title VII claim in part on his 1996 termination for

allegedly falsifying medical certification forms. Johnson included this allegation in the Charge

---

terms that I had not signed that form. I did not give Mr. Johnson any additional documents
regarding his treatment at the Medical Center." Amir Dec. ¶ 8.

of Discrimination he filed with the EEOC. Johnson also bases his Title VII claim in part on his earlier 1995 termination for allegedly insulting and threatening another employee. Johnson did not include this allegation in the administrative charge.

Johnson's Title VII claim for the 1995 termination is barred because he did not exhaust his administrative remedies for that termination before filing suit. The EEOC is responsible for the administrative intake, investigation, and conciliation of charges of discrimination under Title VII. §42 U.S.C.A. § 2000e-5(b). An aggrieved party may only bring private action under Title VII after first filing a timely administrative charge with the EEOC and exhausting the EEOC's investigation and conciliation process. See, e.g., Causey v. Balog, 929 F. Supp. 900, 907 (D. Md. 1996). In addition, the aggrieved party must file an administrative charge with the EEOC within 300 days of the alleged discriminatory act to be timely. See Leskinen v. Utz Quality Foods, Inc., 30 F. Supp. 2d 530, 533 (D. Md. 1998); § 2000e-5(e). Johnson filed his administrative charge with the EEOC on December 10, 1996; accordingly, it was timely for any alleged discriminatory acts contained in the charge that occurred on or after February 14, 1996. Johnson's 1995 termination was not included in his administrative charge and is barred by his failure to exhaust his administrative remedies within 300 days of that occurrence.

The continuing violation doctrine, which may operate to save certain unexhausted, otherwise time-barred claims, is inapplicable to these facts. The continuing violation doctrine generally applies where the defendant has maintained a discriminatory policy or system over time, or where the plaintiff has suffered from a series of related discriminatory acts.[2] See 2

---

[2]     The application of the continuing violation doctrine is most clear cut in the systemic violation context–when the employer has a formal rule or policy of disparate treatment.

Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1357 (3d ed. 1996). In

these circumstances, discriminatory acts that occurred outside the limitations period are not

barred so long as they are part of a continuing violation and at least one discriminatory act

occurred within the limitations period.  See id.  The Fourth Circuit has not adopted its own

definition of a continuing violation, and the definitions adopted by other circuits vary.  See, e.g.,

DeNovellis v. Shalala, 124 F.2d 298 (1st Cir. 1997) (finding continuing violation where violation

is systemic or serial); Malhotra v. Cotter & Co., 885 F.2d 1305 (7th Cir. 1989) (finding

continuing violation when "plaintiff had no reason to believe he was a victim of discrimination

until a series of adverse actions established a visible pattern of discriminatory mistreatment);

Berry v. Board of Supervisors, 715 F.2d 971 (5th Cir. 1983) (finding continuing violation via

three-prong test considering type of conduct, frequency of alleged acts, and degree of

permanence of acts).  Yet the various formulations of the continuing violation doctrine generally

consider two main criteria:  whether the separate incidents are sufficiently related, and whether

the acts individually should have triggered the plaintiff's awareness of and duty to challenge the

employer's discriminatory conduct.  See id.; 2 Barbara Lindemann & Paul Grossman,

Employment Discrimination Law 1357-63 (3d ed. 1996).  Johnson's time-barred 1995

termination claim is not sufficiently related to his 1996 termination claim to survive under the

continuing violation doctrine.  Johnson was terminated from Store 214 by Bird based on

allegations by Bird and Lipynski that Johnson insulted and threatened Lipynski.  After being

---

As Giant correctly adduces, Johnson offers no credible evidence of a formal rule or policy of
disparate treatment.  See Def.'s Reply at 3.  This does not, however, rule out the possibility of a
serial violation that triggers the continuing violation doctrine.

reinstated at Store 119, Johnson was terminated by Tanis based on allegations by Dr. Amir, who is not a Giant employee, that he falsified medical leave documents. The only similarity between the two events is that Johnson was terminated. To the extent that the 1995 termination was discriminatory, its discriminatory nature should have been apparent. It should have alerted Johnson of his duty to challenge it. Johnson's untimely allegation regarding his 1995 termination cannot be saved under the continuing violation doctrine.

Moreover, even if Johnson had exhausted his administrative remedies in a timely manner, he fails to present a viable Title VII claim with regard to the 1995 termination. Johnson's only direct evidence of racial discrimination by Giant is an abhorrent incident at Store 95 in 1989 or 1990. In that incident, Kenny Holt, a Caucasian Meat Manager, left a hangman's noose in the meat box for African American employee Caroldine Brown to find. See Brown Dep. at 55-60. This evidence of discriminatory conduct, although indisputably deplorable, is not legally sufficient evidence of racial discrimination for Johnson's claim. "What is required . . . is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995). Isolated discriminatory conduct unconnected to the negative employment decision is not direct evidence of discrimination. See O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-49 (4th Cir. 1995), reversed on other grounds, 517 U.S. 308 (1996); Burns v. AAF-McQuay, Inc., 96 F.3d 728, 732-33 (4th Cir. 1996); Collier v. Service America Corp., 934 F. Supp. 168, 171 (D. Md. 1996). This is so even when the discriminatory conduct is done by the ultimate decision maker or influential supervisors. See O'Connor, 56 F.3d at 549. The evidence of the incident at Store 95 does not bear directly on the contested employment

-8-

decision. That discriminatory conduct was directed at an employee other than Johnson, at a store other than the one at which Johnson was terminated, by an employee with whom Johnson has had no interaction, several years before Johnson was even hired. Thus, Johnson's direct evidence is legally insufficient.

To create a presumption of discrimination in a termination case without direct evidence, the plaintiff must demonstrate 1) that he is a member of a protected class; 2) that he was discharged, 3) that he was performing the job satisfactorily, meeting the employer's legitimate expectations, and 4) that the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. See Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989). Despite some questionable circumstances surrounding his termination, those circumstances do not raise an inference of unlawful discrimination. There were no witnesses to the alleged name calling or threat making other than Johnson and Lopynski. It appears that Johnson and Lopynski's relationship was contentious at best. There is evidence that Bird had previously asked Lopynski to invent charges against Johnson so that Bird could terminate Johnson, but Lopynski declined to do so. See Brown Dep. at 25-26. In addition, the only evidence of the threat comes from Bird. Lopynski's memorandum that recounts the name-calling does not mention a threat. Nonetheless, Johnson provides no evidence to connect his termination by Bird to racial discrimination.

Furthermore, even if Johnson were to succeed in establishing a prima facie case, however, Johnson has not carried his ultimate burden of persuasion. Once the defendant articulates a legitimate, nondiscriminatory reason for terminating the plaintiff, the burden shifts to the plaintiff to show that the defendant's proffered reason for terminating him is pretextual.

See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Vaughn v. Metrahealth Co., Inc., 145 F.3d 197, 201-02 (4th Cir. 1998). Johnson offers no comparative evidence that any other similarly situated persons outside of the protected class were treated differently. Nor does Johnson provide evidence that Giant has not relied on the same reasoning in past decision-making, that Giant failed to articulate a reason for terminating Johnson at the time of the termination, or that Giant has offered conflicting justifications for the termination. Johnson has consistently contended that he did not insult or threaten Lipynski and, although he alleged no discrimination at the time, Johnson now contends that Giant's true motivation for terminating him was racial animus. Unsubstantiated allegations and bald assertions cannot carry the day. See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996). Johnson has not demonstrated that Giant's rebuttal is pretextual.

In Johnson's other Title VII claim, which is not time-barred, Johnson alleges that Giant unlawfully discriminated against him in 1996 when he was terminated for allegedly falsifying medical leave documents. Again, Johnson has no legally sufficient direct evidence of discrimination. Nor does Johnson establish a prima facie case of discrimination. Johnson cites no evidence surrounding his termination that gives rise to any inference of discrimination. Even if one assumes that Johnson established a prima facie case, he does not demonstrate that Giant's rebuttal is pretextual. Giant has consistently stated that it terminated Johnson for falsifying medical leave documents. Indeed, the record shows that Giant had good reason to believe that Johnson falsified the documents in question. Johnson offers no comparative evidence that any other similarly situated persons outside of the protected class were treated differently. Nor does Johnson provide evidence that Giant has not relied on the same reasoning in past decision-

-10-

making, that Giant failed to articulate a reason for terminating Johnson at the time of the termination, or that Giant has offered conflicting justifications for the termination. Johnson has consistently contended that he did not falsify the medical leave documents and that Giant's true motivation for terminating him was racial animus. Unsubstantiated allegations and bald assertions still cannot carry the day. See Evans, 80 F.3d at 960. Johnson has not demonstrated that Giant's rebuttal is pretextual.

Summary judgment on these claims is granted in favor of Giant.

III.

Johnson failed to exhaust the administrative remedies for his Title VII retaliation claim. As required for any Title VII claims, a retaliation claim must first be included in the plaintiff's administrative charge to the EEOC.[3] Only after he is issued a Notice of Right to Sue may Johnson bring suit against Giant. See 42 U.S.C. § 2000e-5(f)(1). Because Johnson did not include his retaliation claims in an administrative charge to the EEOC at all, let alone within 300 days of their occurrence, his claims are barred. See Causey v. Balog, 929 F. Supp. 900, 907 (D. Md. 1996); Leskinen v. Utz Quality Foods, Inc., 30 F. Supp. 2d 530, 533 (D. Md. 1998); § 2000e-5(e).

Moreover, Johnson cannot meet the prima facie requirements of a retaliation claim. To do so, the plaintiff must show 1) that he engaged in a protected activity, 2) that the employer took an adverse employment action against the employee, and 3) that a causal connection exists

---

[3] Nealson v. Stone, which creates an exception to the administrative exhaustion requirement for retaliation claims stemming from prior EEOC charges, is inapplicable because Johnson did not file any EEOC charge prior to his 1996 termination. 958 F.2d 584, 590 (4th Cir. 1992).

between the protected activity and the adverse action.  See Munday v. Waste Management of North Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997).  Johnson was not engaged in a protected activity when he filed a grievance with his Union regarding Giant's "failure to make him full-time."  Def.'s Mot for Summ. J., Interr. No. 10, Ex. 19.  A protected activity is one in which the employee opposes an employment practice on the ground that it violates Title VII.  See Simmons v. Shalala, 946 F. Supp. 415, 420 (D. Md. 1996).  Johnson did not allege any racial discrimination in the grievance.  In fact, he believed that Giant should have offered the full-time position to him on the basis of seniority, but instead Giant offered it to another Porter who is an African-American.  See Johnson Dep. at 377-80.

Johnson also does not demonstrate a causal connection between his grievance and his 1996 termination.  To establish a causal connection, the plaintiff must demonstrate that the decision makers knew about the plaintiff's protected activity.  See Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998).  Tanis and Baer, the decision makers for the 1996 termination, did not know about Johnson's union grievance.  Johnson offers no evidence that his termination was in any way related to his union grievance.

Summary judgment is granted in favor of Giant for the Title VII retaliation claim.

IV.

Unlike Title VII, Section 1981 does not require a plaintiff to exhaust his administrative remedies with the EEOC before commencing a private action.  See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 461 (1975); 42 U.S.C. § 1981.  Thus, Johnson's claim that is barred under Title VII on procedural grounds is not barred for the purposes of Section 1981.  As discussed above, however, all of Johnson's Title VII claims would have failed even if they were

-12-

not procedurally barred. "Under Title VII and . . . Section 1981, the elements of the required

prima facie case are the same." Gairola v. Virginia, 753 F.2d 1281, 1285 (4th Cir. 1985). If a

plaintiff's 1981 claims are based on the same allegations as his failed Title VII claims, the 1981

claims must fail, too. See id.; Causey v. Balog, 162 F.3d 795, 804 (4th Cir. 1998). Summary

judgment is granted in favor of Giant on the Section 1981 claims.

V.

Johnson also brings claims under Section 1985(3) and Section 1986. 42 U.S.C. §§

1985(3), 1986. The elements of a Section 1985(3) claim are 1) a conspiracy of two or more

persons, 2) for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person

or property or deprived of any right or privilege of a citizen of the United States. Carpenters

Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).

Johnson alleges a conspiracy between Giant and the Union in an entirely conclusory

manner. In his complaint, Johnson cites no facts supporting a conspiracy but merely avers that

"[t]he complacency, condoning and acquiescence by Johnson's union is more evidence of the

company and Giant's scheme and web of conspiracy" and that "unions at Giant have no power . .

.." Pl.'s Opp. at 68, 71. Because Johnson has no concrete facts to support any aspect of his

conspiracy allegations, his Section 1985(3) claim must fail. See Simmons v. Poe, 47 F.2d 1370,

1377 (4th Cir. 1995); Fisher v. Maryland Dep't of Hous. & Comm. Dev., 32 F. Supp. 2d 257,

265 (D. Md. 1998). Summary judgment is granted in favor of Giant.

Section 1986 provides a cause of action against a party with knowledge of a Section 1985

-13-

conspiracy. 42 U.S.C. § 1986. Because Johnson's Section 1985(3) claim fails, his Section 1986 claim must fail as well. See Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985). Summary judgment is granted in favor of Giant for the Section 1986 claim.

VI.

Johnson also claims that Giant 1) breached an employment contract with Johnson, and 2) breached a collective bargaining agreement with Union Local 400 to which Johnson is a third-party beneficiary. Johnson neither identifies nor provides evidence of the employment contract that Giant allegedly breached. Without such basic evidence or allegations, summary judgment is granted in favor of Giant regarding the alleged breach of an employment contract.

In regard to the alleged breach of the collective bargaining contract, Johnson's state law claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185. Section 301 of the LMRA preempts state law claims whose resolution depends on the interpretation of the collective bargaining agreement. See McCormick v. AT&T Technologies, Inc., 934 F.2d 531 (4th Cir. 1991). Johnson's claim turns on whether Giant's conduct violated the terms of the collective bargaining agreement, which requires interpretation of the collective bargaining agreement. Because Johnson's breach of contract claim is preempted by the LMRA, summary judgment is granted in favor of Giant.

VII.

Johnson's final claim is for wrongful discharge. To the extent that Johnson means Giant retaliated against him for filing a grievance regarding Giant's discrimination against him on the basis of race, Johnson's wrongful discharge claim is precluded by Title VII. A plaintiff lacks a wrongful discharge claim where the "alleged tort is [] expressed in a statute which carries its own

-14-

remedy for vindicating that public policy." <u>Orci v. Instituform E.</u>, 901 F. Supp. 978, 983 (D. Md. 1995); <u>see also</u> <u>Makovi v. Sherwin-Williams Co.</u>, 561 A.2d 179 (Md. 1989). Title VII provides a complete remedy for wrongful termination based on retaliation or employment discrimination based on race. Therefore, Johnson cannot state a claim for wrongful discharge on the basis of race under Maryland law.

Yet the grievance in question does not mention race. The grievance alleges that Giant wrongfully denied Johnson a full-time position. Johnson claims that the full-time position was improperly offered to another employee who is also African American. In addition, neither the grievance itself or any communications surrounding Johnson's grievance mention racial discrimination. Johnson's wrongful termination claim is not precluded by Title VII to the extent that Johnson alleges wrongful termination in retaliation for filing a grievance with the Union which does not allege discrimination. Instead, in that scenario, Johnson's wrongful termination claim fails because Johnson does not identify any public policy that was jeopardized by Giant's conduct.[4]

To establish a claim for wrongful discharge, an employee must generally show that 1) a clear, specific public policy existed, 2) the plaintiff was discharged, 3) the dismissal of the plaintiff jeopardized the public policy, and 4) the plaintiff's dismissal was motivated by the conduct related to the public policy. <u>See</u> <u>Adler v. Am. Standard Corp.</u>, 432 A.2d 464, 467 (Md.

---

[4]     Johnson's wrongful discharge claim alleging retaliation for filing a union grievance may also be preempted by the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185. Section 301 of the LMRA preempts state law claims whose resolution depends on the interpretation of the collective bargaining agreement. <u>See</u> <u>McCormick v. AT&T Tech., Inc.</u>, 934 F.2d 531 (4th Cir. 1991). Even if the claim were not preempted by the LMRA, however, the wrongful discharge claim would fail on state law grounds.

1981); <u>Page v. Carolina Coach Co.</u>, 667 F.2d 1156, 1158 (4th Cir. 1982) (applying Maryland

law). The employee "must demonstrate the policy in question with clarity, specificity and

authority." <u>Bagwell v. Peninsula Reg'l Med. Ctr.</u>, 665 A.2d 297, 309 (Md. Ct. Spec. App. 1995),

<u>cert. denied</u>, 669 A.2d 1360 (Md. 1996). Johnson can only prove one element–that he was

discharged. I do not comment on the state of public policy regarding discharge in retaliation for

filing a Union grievance not based on discrimination. Johnson simply did not carry his burden of

identifying any public policy that might have been jeopardized by Giant's conduct. Nor did

Johnson offer any evidence that his termination was motivated by his Union grievance.

Therefore, even in this alternative scenario, Johnson does not have a viable claim for wrongful

discharge under Maryland law.

Summary judgment is granted in favor of Giant regarding the wrongful discharge claim.

A separate order effecting the rulings made in this opinion is being entered herewith.


Date: November 22, 2000

                                                    J. Frederick Motz
                                                    United States District Judge

-16-